# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CIVIL ACTION NO. 2:18-cv-05417

---

**PENNSYLVANIA HOUSING FINANCE AGENCY,**
**Appellant**

v.

**DAVID G. HAMILTON and ALEXANDRA L. HAMILTON,**
**Appellees**

---

*Appeal from the Order of the*
*United States Bankruptcy Court for the Eastern District of Pennsylvania*
*Dated November 30, 2018, Determining the Secured Status of the lien of the*
*Pennsylvania Housing Finance Agency Pursuant to 11 U.S.C. §506*

---

## BRIEF FOR APPELLANT
## PENNSYLVANIA HOUSING FINANCE AGENCY

---

**JADA S. GREENHOWE, ESQ.**
**Assistant Counsel**
**Attorney I.D.# 316990**

**Pennsylvania Housing Finance Agency**
**211 North Front Street**
**Harrisburg, PA 17101**
**(717)780-3880**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT .......................................................1

STANDARD OF REVIEW ................................................................1

STATEMENT OF ISSUES PRESENTED ..............................................2

STATEMENT OF THE CASE ...........................................................3

    A.   *Procedural History* ..............................................................2

    B.   *Factual History* ...................................................................4

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT .................................................................................8

  I.   The Bankruptcy Court Erred in its ruling that Lender's Material Modifications of its Mortgage did not have a Prejudicial Effect on Appellant's Junior Mortgage such that Appelleant's Consent was required.… ...................................................................................9

CONCLUSION ...........................................................................19

CERTIFICATE OF COMPLIANCE

PROOF OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Baroda Hill Invs., Inc. v. Telegroup, Inc.*
  281 F.3d 133 (3d Cir. 2002).  ................................................................1

*Brown v. Pennsylvania State Employees Credit Union*
  851 F.2d 81 (3d Cir. 1988).  .................................................................1

*Burney v. McLaughlin*
  63 S.W.3d 223 (Mo. App. 2001).  .....................................................8, 11

*In re Graves*
  156 B.R. 949 (E D Pa. 1993) ...............................................................1

*Lennar Northeast Partners v. Buice*
  49 Cal. App. 4th 1576 (1996)... .........................................................10

*M&T Mortg. Corp. v. Trosky (In re Trosky)*
  371 B.R. 701 (Bankr. M.D. Pa 2006). .................................................8

*Shultis v. Woodstock Land Dev. Assocs.*
  188 A.D.2d 234, 594 N.Y.S.2d 890, 892 (N.Y. App. Div. 1993).  ....................9


**Statutory Provisions**

28 U.S.C.§ 157 ....................................................................................2

28 U.S.C.§ 158 ....................................................................................2

28 U.S.C. §1334 ..............................................................................1,16

42 Pa.C.S. § 8141, *et seq.* .................................................................8,16

## I.  **JURISDICTIONAL STATEMENT**

The Bankruptcy Court of the Eastern District of Pennsylvania ( "Bankruptcy Court") has subject matter jurisdiction over the chapter 13 bankruptcy proceedings initiated by David G. Hamilton and Alexandra L. Hamilton ("Debtors" or "Appellees") pursuant to 28 U.S.C §157 and 28 U.S.C. §1334. Pursuant to 28 U.S.C. §158, this Court has jurisdiction over the instant appeal.

The November 30, 2018, Bankruptcy Court order pursuant to which this appeal is taken is a final appealable order. A  Notice of Appeal was timely filed by the Pennsylvania Housing Finance Agency ("Appellant") on December 13, 2018.

## II. **STANDARD OF REVIEW**

In its review of orders entered by the Bankruptcy Court, this Court serves as an appellate court, thus findings of fact by the Bankruptcy Court are reviewed for clear error. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84, 1988 U.S. App. LEXIS 8713, *7, 18 Bankr. Ct. Dec. 70, Bankr. L. Rep. (CCH) P72, 383. This Court, however, exercises plenary or *de novo* review of conclusions of law. *In re Graves*, 156 B.R. 949, 953, 1993 U.S. Dist. LEXIS 9554, *7; *Baroda Hill Invs., Inc. v. Telegroup, Inc.* (In re Telegroup, Inc.), 281 F.3d 133, 136, 2002 U.S. App. LEXIS 2415, *5, Bankr. L. Rep. (CCH) P78,592, 47 Collier Bankr. Cas. 2d (MB) 1372, 39 Bankr. Ct. Dec. 30.

### III. <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether the Bankruptcy Court erred in its determination that Lender's material  modifications of its Mortgage did not have a prejudicial effect on Appellant's junior mortgage and that neither notice to Appellant nor its consent was required.

### IV. <u>STATEMENT OF THE CASE</u>

*A. Procedural History*

On December 3, 2016, Debtors initiated the bankruptcy proceeding from which this appeal arises. Subsequently, on February 24, 2017, Bayview Loan Servicing, LLC ("Bayview") filed a secured proof of claim in the amount of $189,065.68. Thereafter, on April 19, 2017, PHFA filed a secured proof of claim in the amount of $18,263.18. Debtors subsequently, on July 16, 2017, initiated an adversary action through the filing of a complaint (the "Complaint") to determine the secured status of Appellant's mortgage claiming, in relevant part, that Appellant's lien was unsecured on the basis that the total amount owed to Bayview exceeds the value of the Debtors' primary residence, which the parties have agreed is approximately $175,000. In its Answer to the Complaint, PHFA asserted that the entire sum owed to Bayview is not priority to PHFA's lien, as Bayview's mortgage was materially modified on multiple occasions subsequent to the recording of PHFA's mortgage, thereby unfairly prejudicing the security of PHFA's junior lien.

Following several status conferences on the matter, the Bankruptcy Court ordered that the parties brief the issues at law, which, in relevant part, were whether Bayview materially modified its mortgage and whether such modification substantially impaired or prejudiced PHFA's interest as a junior creditor. The parties subsequently submitted briefs on the relevant issues of law and, after a hearing on the matter, the Bankruptcy Court, on November 30, 2018, issued its ruling, which held, *inter alia*, that PHFA's interest in the Debtors' property was unsecured. A notice of appeal of the Bankruptcy Court's November 30, 2018, order was timely filed on December 13, 2018.

### B. *Factual Background*

This case presents an issue of first impression in Pennsylvania. By deed dated June 25, 2002, and recorded on July 5, 2002, Debtors obtained ownership of their primary residence located at 125 Charles Avenue, Brookhaven, PA 19015 (the "Property"). Thereafter, on December 10, 2004, a mortgage was originated with EverBank and recorded against the Property in the original principal amount of $145,000 (the "Mortgage").  Said Mortgage initially had a maturity date of January 1, 2035. The Mortgage was later sold and assigned to J.P. Morgan Chase

Bank, NA, which in turn assigned the Mortgage to M&T Bank (collectively, the "Lender")[1], which currently holds the first mortgage on the Property.

In May 2010, Debtors received an Act 91 Notice from Lender, which indicated that the Mortgage on the Property was severely delinquent as they had failed to make monthly payments. The Act 91 Notice also informed Debtors of their right to apply for a Homeowner's Emergency Mortgage Assistance ("HEMAP") loan, which would cure their Mortgage delinquency and prevent the home from going into foreclosure. At that time, the unpaid principal balance on Lender's mortgage should have been approximately $135,000.[2] The Debtors were subsequently approved for HEMAP assistance and PHFA, which administers HEMAP, paid $18,263.18 directly to Lender to cure the outstanding arrearages.

---

[1] Act 91 Notice refers to the state-mandated notice that all lenders must send to delinquent homeowners whose mortgages meet the eligibility criteria prior to initiating foreclosure. This requirement is established in 35 P.S. §1680.401c, *et. seq.* The Act 91 Notice related to the present action was originally mailed by J.P. Morgan Chase, NA. The loan was subsequently sold to M&T Bank after origination of the Pennsylvania Housing Finance Agency, Homeowner's Emergency Mortgage Assistance Program loan. For purposes of the instant matter, it is not relevant which bank sent the Act 91 Notice as the mortgage is one that is eligible to receive HEMAP assistance pursuant to 35 P.S. §1681.401c, *et. seq.* Thus, for ease of reference, J.P. Morgan Chase, NA and M&T Bank will collectively be referred to as "Lender."

[2] This figure was calculated based on the payment amount identified on the original Note, which was attached to Bayview's Proof of Claim. Based on what is known about when the HEMAP loan was issued, Debtors had been making payments on the account for at least five (5) years, prior to the mortgage becoming delinquent. If $145,000, the original mortgage amount, is multiplied by the interest rate identified in the Note or .0575, the interest portion of the monthly payment would have been approximately $694.79 and the amount that went to principal would have been approximately $151.39. When the principal payment amount is multiplied by 60 (representing five years of payments), the figure derived is $9,083.40. This amount, when deducted from the original principal amount leaves a principal balance of $135,916.60. It should be noted that this figure does not account either for escrow payments or the normal amortization of the loan, which actually should have applied more to principal and less to interest each month as payments were made.

Application of the HEMAP loan would have further decreased the principal balance of the debt owed to Lender. Simultaneously with issuance of the HEMAP loan, PHFA recorded an open-end mortgage[3] on the Property (the "PHFA-HEMAP Mortgage" or the "HEMAP loan"). The PHFA-HEMAP Mortgage does not have a maturity date.

Following issuance of the HEMAP loan, Debtors again fell delinquent on the Mortgage payments in 2013, which precipitated the First Modification of the Mortgage loan.[4] Based on the Complaint in Mortgage Foreclosure ("Foreclosure Complaint") filed in the Delaware County Court of Common Pleas, the principal balance of the debt, as a result of the First Modification, increased and the interest rate remained unchanged (A-002). At the time that the Foreclosure Complaint was filed, the principal balance had increased to $148,639.72, which represented at least a $13,000 increase from the date that the 2010 HEMAP loan was approved. Interest also accrued on this new principal balance at the Note rate of 5.75%.

In 2015, Debtors again became delinquent on Lender's Mortgage, which resulted in a second loan modification (the "Second Modification") between

---

[3] Plaintiff's counsel notes that the PHFA-HEMAP Mortgage claims rights to future rents. Unlike a closed-end mortgage such as Lender's, under Pennsylvania law, an open-end mortgage, in general, "may secure unpaid balances of advances made after such open-end mortgage is left for record" without jeopardizing the priority of the lien. 42 Pa. Cons. Stat. §8143.

[4] Plaintiffs never revealed that the Mortgage had been modified on more than one occasion. This fact was learned by a search of the Delaware County Court of Common Pleas civil docket, on which the Complaint in Mortgage Foreclosure against Debtors may be accessed. This document was recently discovered and constitutes a public record, as its contents are available to the public for free. A copy, however, has been attached for ease of reference.

Lender and Debtors. According to the record, at the time of the Second Modification, Debtors owed $24,074.67, which consisted of unpaid interest and funds advanced by Lender for the payment of taxes, insurance and "other expenses." (A-030). Said amount was capitalized and, thereby, added to the principal balance of the loan increasing the principal balance once again from approximately $148,000 to $172,464.87. The Second Modification reduced the interest rate from 5.75% to 3.625%, but recast the loan out to forty (40) years from the date of the execution of the Second Modification in 2015, by extending the original maturity date from January 1, 2035, to August 1, 2055.

Bayview Loan Servicing, LLC ("Bayview"), which services the Mortgage on behalf of Lender, initiated an Action in Mortgage Foreclosure, following a fourth default by Debtors. A Sheriff's Sale (the "Sale") of the Property was scheduled for December 3, 2016. Debtors filed a petition in bankruptcy, which stayed the Sale.

On February 24, 2017, Bayview filed a secured proof of claim in the amount of $189,065.68, which was followed, on April 19, 2017, by PHFA's secured proof of claim in the amount of $18,263.18. Thereafter, Debtors filed a complaint to determine the secured status of the PHFA's Mortgage. The Bankruptcy Court ultimately determined that the modifications to Lender's first mortgage neither substantially impaired nor prejudiced PHFA's interest as a junior creditor.

# V. **SUMMARY OF THE ARGUMENT**

Under Pennsylvania law, liens are given priority based on the order in which such liens are recorded. The reordering of lien priority is an issue of first impression in the Commonwealth. Other race-notice jurisdictions, however, have examined the issue and determined that where a senior lienholder materially alters the terms of its mortgage and where such modifications result in a prejudicial impact to junior lienholders, the priority of the liens may be reestablished, resulting in the mitigation or elimination of the detrimental impact of the senior lien modifications to junior lienors.

Appellant appeals from the November 30, 2018, order of the Bankruptcy Court, which determined that Lender's material mortgage modifications did not unfairly prejudice or impair the value of Appellant's lien, where such modifications increased the principal balance of the Mortgage, thereby absorbing all equity in the subject collateral and, extending the Mortgage's maturity date, thereby substantially reducing the likelihood of repayment of Appellant's loan. Furthermore, the senior lienholder arguably had a duty to record, at a minimum, the Second Modification, not only under Pennsylvania recording statutes, but based on the wording of the loan modification agreement itself.

## VI. **ARGUMENT**

**A.** ***The Bankruptcy Court Erred in holding that Lender's Material Modifications of its Mortgage did not have a Prejudicial Effect on Appellant's Junior Mortgage and that Appellant's Consent was not required.***

   1.  ***Material modifications to senior liens that substantially impair or unfairly prejudice junior lienholders are subordinate to junior creditors' interests.***

Pennsylvania law has specified that the priority of liens is determined by the order in which the security instruments evidencing such liens were recorded. See, generally, 42 Pa.C.S. §8141.[5] The clear intent of recording statutes is to place potential creditors on notice of the encumbrance and the extent to which the creditor holds an interest in the collateral. *M&T Mortg. Corp. v. Trosky (In re Trosky),* 371 B.R. 701, 705, 2006 Bankr. LEXIS 4297, *7. Contractually, a senior mortgagee may modify its mortgage without notice to or the consent of a junior creditor. It has been recognized in federal courts, however, that such modifications may "create priority disputes vis a vis intervening junior lienholders," which, depending on the materiality of the modification, could trigger the reordering of priorities. *Burney v. McLaughlin*, 63 S.W.3d 223, 230, 2001 Mo. App. LEXIS 1714, *11.

---

[5] *See*, 42 Pa. C.S. §8141, stating: " Liens against real property shall have priority over each other on the following basis: (1)  Purchase money mortgages, from the time they are delivered to the mortgagee, if they are recorded within ten days after their date;  otherwise, from the time they are left for record."

Altering the priority of perfected security interests is an issue of first impression in the Commonwealth. Thus, in its ruling, the Bankruptcy Court declined to alter the priority of Appellant's lien in relation to the modified portion of Lender's lien. The issue has, however, been addressed in other race-notice or first in time, first in right jurisdictions. Courts have determined that while a senior mortgagee may modify the terms of its note and mortgage without notice to junior lienholders, if such modification "prejudices the rights of the junior lienors or impairs the security, their consent is required." *Id*. at 12. See also, *Shultis v. Woodstock Land Dev. Assocs.*, 188 A.D.2d 234, 594 N.Y.S.2d 890, 892 (N.Y. App. Div. 1993). Where such consent is necessary, but not acquired, junior lienholders have either been elevated to an entirely superior lien position to the senior mortgagee or the modification has been rendered ineffective as to junior liens and the modified terms subordinate to the interests of junior lienholders. *Id*. When analyzing whether a senior mortgagee has wholly or partially relinquished its lien priority, the primary factors assessed "are whether the modification increased the interest rate or the principal amount of the mortgage obligation." *Id*. at 20. See also, *Shultis v. Woodstock Land Dev. Assocs.*, 188 A.D.2d 234, 594 N.Y.S.2d 890, 892 (N.Y. App. Div. 1993); Restatement (Third) Of Property, *Mortgages*, § 7.3 cmt. b (1997). While it may be probative, the extension

of new credit has not been articulated as one of the predominant factors considered in the analysis of restructuring lien priorities.

In *Lennar Northeast Partners v. Buice*, 49 Cal. App. 4th 1576 (1996), a case referenced in Plaintiffs' Brief, the court ultimately held that modifications to a senior deed of trust, which amended the principal balance, interest rate and maturity date placed junior lienholders in a worse position than what was initially bargained for and thus, to restore the equities of the transaction, determined that the modified terms and amounts held a lesser priority than the junior creditor's interest.

In that case, the Defendant, the Buice Revocable Living Trust (the "Trust") purchased a Note that was secured by a deed of trust on a piece of real property. The property was also secured by a second deed of trust held by Lennar Northeast Partners ("Lennar"). During the term of the loan, the Trust modified its note, increasing the principal balance by approximately $140,000 and altering the interest from a variable rate of prime plus 3, to a fixed rate of twelve percent (12%). The Trust had also extended the term of the loan for one year.

The California Court of Appeals indicated that, in general, an extension of debt that merely alters the date of payments is not injurious to junior lienholders. *Id*. at 1585. The court went on to indicate, however, that *when aggregated with an increase in the principal balance or an increase in the interest rate, a junior*

*creditor is detrimentally impacted*. *Id*. The court determined that the combined effect of the Trust's modifications was to increase the amount of the secured debt that was senior to Lennar's lien.

Similarly, in the Court of Appeals of Missouri case, *Burney v. McLaughlin*, 63 S.W.3d 223 (2001), the court held that the modification of a senior mortgage, which increased the interest rate, combined with payment of appraisal and loan term extension fees and other provisions were material such that they impaired the interests of a junior creditor and, therefore, warranted the subordination of the modifications to the junior lienor's interests. There, the Respondents were the former owners of an inn, which sat on a tract of land comprised of two parcels. To fund the construction of inn units, Respondents obtained a loan. Respondents subsequently sold the front parcel of land to a purchaser who was required to provide a down payment on the purchase price, pay the remaining balance of the note and mortgage that encumbered the inn and to permit Respondents to hold a second lien on the premises. Following completion of the sale, the purchaser and the bank conducted a series of modifications to the senior debt, which included increasing the interest rate, the addition of appraisal, renewal and extension fees to the debt and the inclusion of other various provisions. These modifications resulted in the bank's collection of additional interest and added to the debt burden initially

assumed by the purchasers, which the court determined materially prejudiced the Respondents' interest in the collateral. *Id*. at 232.

### 2. The PHFA-HEMAP Mortgage was Substantially Impaired or Prejudiced by the Mortgage Modifications.

In the case at bar, Lender's modifications of its Mortgage have substantially impaired or, at a minimum prejudiced Appellant's Mortgage, by increasing the principal balance of the debt, thereby increasing the burden of the debt originally anticipated and absorbing any of the remaining equity in the Property. In addition, the modifications capitalized arrearages, which caused additional interest to accrue on unpaid interest, and significantly extended the maturity date of the loan. Collectively, the modifications jeopardized the security of the PHFA-HEMAP Mortgage. As a result, these modifications should not take priority over the Appellant's lien.

Prior to the application of HEMAP funds to the defaulted Mortgage, the unpaid principal balance was approximately $135,000 and there were twenty-five (25) remaining years on the life of the loan. It is unclear how much the principal balance was reduced after application of the $18,000 of HEMAP loan proceeds in 2010. It is clear, however, Lender, in 2013, modified the loan by increasing the principal balance by a minimum of $13,000, which accrued interest at the note rate of 5.75%. The record does not contain an itemization of the fees added to the principal balance, but it can be surmised that the amounts were the result of

delinquent payments, advances and other fees and costs. Although the interest rate was not increased, by rolling delinquent principal and interest into the principal balance, Lender caused interest to compound at the note rate. Stated otherwise, Lender began collecting interest on unpaid interest amounts, which was a portion of the increased principal balance.

The Second Modification in 2015 also increased the principal balance by further aggregating delinquent principal and interest into the principal balance.(A-030). Additionally, although the interest rate was reduced, the loan term recommenced and was cast out to forty (40) years from the execution of the loan modification or an additional twenty (20) years past the original maturity date. Therefore, any benefit that may have been derived from the reduction of the interest rate was nullified by the extension of the life of the loan from thirty (30) years to forty (40) years.[6] Further, not only had Lender been able to collect at least $25,000 worth of repayments during the ten prior years that the loan had been in existence, but through the Second Modification, had given itself the ability to

---

[6] If Lender were to collect 5.75% interest on $145,000 over the course of thirty (30) years, the total debt collected by Lender would have been approximately $304,625.03. If Lender were to collect 3.625% interest on $172,464.87 over the course of forty (40) years, Lender would have collected a total of approximately $326,929.90. These figures were derived by multiplying the monthly payment by the life of the loan—360 and 480, respectively. Although these figures do not take into account the amortization of the loan, they serve to demonstrate that the reduction in the interest rate obtained from the Second Modification was offset by the extension of the loan term and ultimately resulted in an increased debt burden.

collect on the loan for an additional forty (40) years, making the total life of the loan fifty (50) years.

As Debtors' counsel notes, courts have opined that an extension in maturity, alone, does not *per se* result in prejudice to a junior creditor. The term extension utilized in the single case regarding this particular issue cited in Plaintiff's brief, however, was relatively short-term—one year, with an option for another one year extension. Here, however, Lender reinitiated its loan term and extended it for a longer period than originally dictated by the loan documents. When combined with the increased principal balance and compounded interest, the recasting of the loan had the effect of creating a new loan for more debt than the Debtors and Lender had initially bargained and much more than PHFA contemplated.

At the time that it provided its mortgage assistance loan, Appellant anticipated that it would be junior to a mortgage that would have a continually decreasing principal balance. Instead, the Mortgage has accrued compounding interest, additional principal and a longer loan life. Unlike a traditional loan, where the proceeds are given directly to the borrowers to use for the purposes they deem fit, HEMAP loan proceeds were paid directly to Lender for repayment of its loan and to bring the delinquent Debtors current in order to stave off a foreclosure action. Hence, Lenders reaped a direct benefit from the HEMAP loan. As such, it would be inequitable for Lender to be permitted to collect the entire balance of its

loan ahead of Appellant's Mortgage or for Appellant's Mortgage to be stripped of any security as result of Lender's modifications. Moreover, permitting a senior creditor to continually increase the debt it is owed, particularly after it has actual notice of a junior lienor, without providing notice or obtaining consent through the acquisition of a subordination agreement, would eliminate any reliance a junior creditor is able to place on the recorded mortgage documents of any prior lienholder. This result seems to directly contravene the intent and purpose of the Pennsylvania recording statutes.[7]

Pennsylvania law has clearly identified the time from which liens have priority and the method by which that priority is established. In rendering its ruling, the Bankruptcy Court determined that in the absence of the authority to adopt the doctrine of equitable subordination[8] or to apply the restatement[9], it would refrain from doing so. (A-043-A-045). While state courts may not have provided explicit adoption of the Restatement or a direct case on point to the issues presented in the instant matter, the Bankruptcy Court was not barred from applying its own interpretation of state recording statutes which address lien priority. The

---

[7] It should be noted that obtaining subordination agreements from junior lienholders is a regularly occurring practice in the mortgage lending industry. PHFA is a mortgage lender that frequently performs loan modifications. When such modifications contain material modifications, such as an increase in the principal balance of the debt, increase in the interest rate or extend the maturity date, PHFA obtains subordination agreements or otherwise clears any junior liens to ensure that the modified mortgage retains its first lien position.
[8] *See*, Transcript at 9.
[9] *See*, Transcript at 11.

issues presented arose in a core proceeding over which the Bankruptcy Court had jurisdiction and to which the mandatory abstention articulated in 28 U.S.C. 1334(c)(1) was not applicable.[10]   Furthermore, the avoiding of junior liens secured by real property arises in the context of bankruptcy proceedings. As such, there does not appear another forum in which the issues presented in this matter can be adequately addressed. Accordingly, in electing not to apply state law, namely, the Pennsylvania recording statute, to the issues presented herein, the Bankruptcy Court committed an error of law.

**B.      *Fannie Mae Guidelines Have No Bearing on Whether the Modified Portions of the Mortgage are Superior to the PHFA-HEMAP Mortgage and the Language of the Modification Agreement Indicated That the Agreement Would be Recorded.***

Although not addressed in the Bankruptcy Court's ruling, it should be noted that the loan modification agreement utilized by Lender to facilitate the Second Modification indicated that the document was to be recorded. Thus, had Lender complied with the language of its document, pursuant to 42 Pa. C.S. §8141, the Second Modification, arguably would have been junior to Appellant's lien interest.

The Federal National Mortgage Association ("Fannie Mae") is a federal government-sponsored enterprise, which purchases mortgages through the

---

[10]   28 U.S.C. 1334(c)(1) stating: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." See also, *Winnecour v. Taylor* (In re Taylor), 444 B.R. 534, 536, 2011 Bankr. LEXIS 531, 65 Collier Bankr. Cas. 2d (MB) 134

secondary market. *See*, *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553 at 553 (S. Ct. 2017). Lenders must be approved to participate in Fannie Mae's programs. Accordingly, lenders must agree to certain contractual terms, which require, *inter alia*, that loans meet certain criteria. *HSBC Bank, NA v. Donaghy, 101 A.3d 129 at 134.* Fannie Mae will not purchase loans that do not comply with its guidelines. *See*, *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261 at 275.

Debtors, in their brief to the Bankruptcy Court, cite to the Fannie Mae servicing guidelines as justification for Lender's decision to not provide notice or obtain consent for the material modifications to Lender's senior Mortgage. (A-055). Specifically, Debtors reference the modification guidelines applicable to a modification made pursuant to Fannie Mae's Home Affordable Modification Program ("HAMP"). We note that the modification document does not appear to indicate that Lender completed a HAMP modification.  As referenced in Debtors' initial brief, Fannie Mae requires that HAMP modifications be recorded provided that a certain set of circumstances are present at the time of the loan modification. Such reliance on the Fannie Mae guidance, however, continues to be misplaced. The guidelines articulated by Fannie Mae are the requirements that a loan must meet in order to maintain participation in Fannie Mae's programs and compliance with the loan modification option utilized. Such guidelines in no way purport to supersede state law or determine lien priority.

Regardless of Fannie Mae's requirements, the loan modification document used by Lender as provided with Lender's proof of claim, governs the Second Modification and identifies itself as a *Freddie Mac* Uniform Instrument. The modification agreement indicates that the document was to be recorded in the same location with the original security instrument. Indeed, the heading of the document reads in all capitalized letters as follows: "THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS. ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE ***AND ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED***."

Given that this language is found on the Freddie Mac Uniform Instrument, it can be assumed that Freddie Mac intended that Lender record the terms of the Second Modification.[11] Aside from Freddie Mac's requirements, Lender, arguably, had a contractual obligation to record the modification agreement based on the fact that the recording language prefaces the terms of the agreement. As previously noted, the order in which lien priority is determined is based on the order in which such interests were recorded.[12] If Lender had, in fact, recorded the loan modification agreement, as indicated on the agreement itself, the amounts secured

---

[11] The Federal Home Loan Mortgage Corporation is a separately chartered federal government sponsored entity with separate guidelines for mortgage origination and modification.
[12] 42 Pa.C.S. §8141.

by the Second Modification would have had a lower priority than the PHFA-HEMAP Mortgage, absent an agreement to subordinate. Lender should not be afforded the benefit of circumventing the language and requirements contained in its own documents.

## VII. <u>CONCLUSION</u>

For all of the foregoing reasons, Appellant respectfully requests that this Honorable Court Reverse the decision of the Bankruptcy Court and determine that the material modifications to Lenders first mortgage unfairly prejudiced or substantially impaired Appellant's lien and, therefore, Appellant's consent was required. Appellant further prays that this Court determine that as a result of Lender's failure to provide notice of the material modifications of its Mortgage and obtain Appellant's consent, that Appellant's lien is superior to Lender's modified Mortgage or, in the alternative, that Appellant's lien is superior to the modified terms and amounts of Lender's Mortgage and, as a result, is a secured claim against Appellee's Property and for such other relief as this Court deems just and appropriate.

Dated: February 10, 2019          /s/Jada S. Greenhowe_____
                                  Jada S. Greenhowe
                                  Assistant Counsel
                                  Pennsylvania Housing Finance Agency
                                  211 North Front Street
                                  Harrisburg, PA 17101
                                  jgreenhowe@phfa.org
                                  (717)780-4333

## <u>CERTIFICATE OF COMPLIANCE</u>

This document is in compliance with the type-volume requirements established in Federal Rule of Bankruptcy Procedure 8015(a)(7), as it contains **4,719**, excluding items and pages exempted by the rule. Further, this document complies with the type-face requirements delieneated in Federal Rule of Bankruptcy Procedure 8015(a)(5). It has been prepared in Times New Roman font, size fourteen (14), and is double-spaced.

Dated: February 10, 2019          /s/Jada S. Greenhowe_____
                                  Jada S. Greenhowe
                                  Assistant Counsel
                                  Pennsylvania Housing Finance Agency
                                  211 North Front Street
                                  Harrisburg, PA 17101
                                  jgreenhowe@phfa.org
                                  (717)780-4333

## <u>PROOF OF SERVICE</u>

I, Jada S. Greenhowe, hereby certify that on this 10th day of February, in the year 2019, a true and correct copy of the Pennsylvania Housing Finance Agency's **BRIEF IN SUPPORT OF APPEAL**, has been served upon the following persons by first class mail or by electronic notification, at the mailing address or email address set forth below:

> Mitchell J. Prince
> John L. McClain & Associates
> P.O. Box 123
> Narberth, PA 19072
> Mcprince19035@aol.com

Date: February 10, 2019                    /s/ Jada S. Greenhowe
                                           JADA S. GREENHOWE
                                           Attorney I.D. # 316990
                                           PENNSYLVANIA HOUSING FINANCE AGENCY
                                           211 North Front Street
                                           Harrisburg, PA 17101
                                           (717) 780-4333